UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | |
| | * | Criminal Action No. 1:20-cr-10183-IT-2 |
| JUAN EDUARDO VILLAR ARIAS, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM & ORDER

October 19, 2026

TALWANI, D.J.

Pending before the court is Defendant Juan Eduardo Villar Arias's *pro se* Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [Doc. No. 974] ("Motion to Vacate"). For the reasons set forth below, the Motion to Vacate [Doc. No. 974] is DENIED.

## I. Background

On November 30, 2021, Defendant was charged with Conspiracy to Distribute and to Possess with Intent to Distribute 400 Grams or More of Fentanyl, Heroin, and Cocaine, in violation of 21 U.S.C. § 846 (Count 1); Distribution of and Possession with Intent to Distribute 400 Grams or More of Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(vi), and Aiding and Abetting, in violation of 18 U.S.C. § 2 (Count 4); and Possession of a Firearm in Furtherance of a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 8). Superseding Indictment 1–2, 7, 11 [Doc. No. 175]. Defendant faced a statutory mandatory minimum sentence of ten years for the possession with intent to distribute counts, and five years for the firearm count, to be served consecutively. See 21 U.S.C. § 846 (mandatory ten-year sentence); 21 U.S.C. § 841(a)(1), (b)(1)(A)(vi) (same); 18 U.S.C. § 924(c) (mandatory five-year sentence, to be served consecutively).

On June 18, 2024, Defendant pleaded guilty to each of these counts of the Superseding Indictment [Doc. No. 175] pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). See Elec. Clerk's Notes [Doc. No. 694]; Plea Agreement 1 [Doc. No. 688]. Defendant and the government agreed to the following disposition: incarceration for 180 months, 60 months of supervised release, a fine and a $300 mandatory special assessment, and the forfeiture of jewelry seized by investigators from an apartment in Jamaica Plain. Plea Agreement 3–5 [Doc. No. 688]. During Defendant's change-of-plea hearing, the court deferred acceptance of the plea agreement. Elec. Clerk's Notes [Doc. No. 694].

On February 4, 2025, Defendant appeared before the court for sentencing. Elec. Clerk's Notes [Doc. No. 883]. The court accepted the plea agreement and sentenced Defendant to the agreed-upon 180-month term of incarceration (the minimum mandatory sentence), followed by 60 months of supervised release. Id.; Judgment 3 [Doc. No. 884]. The court also advised Defendant of his limited appeal rights under the plea agreement. Elec. Clerk's Notes [Doc. No. 883].

On February 16, 2025, Defendant appealed the court's Judgment [Doc. No. 884] to the United States Court of Appeals for the First Circuit. Notice of Appeal 1 [Doc. No. 889]. In September 2025, Defendant's attorney filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), stating that he was "unable to identify any non-frivolous ground for pursuing an appeal[,]" including with respect to the voluntary nature of Defendant's plea agreement. Anders Br. 2–3, United States v. Villar Arias, No. 25-1172 (1st Cir. Sept. 16, 2025), Dkt. No. 15-1. After the Anders brief was filed, Defendant did not file a supplemental *pro se* brief "in support of reversal or modification of the judgment" by the First Circuit's October 16, 2025 deadline.

Anders Br. Notice 1, United States v. Villar Arias, No. 25-1172 (1st Cir. Sept. 16, 2025), Dkt. No. 15-2.

Defendant's now-pending Motion to Vacate [Doc. No. 974] was filed on January 29, 2026. The government opposes the motion. See Opp'n [Doc. No. 990].[1]

## II. Standard of Review

Pursuant to 28 U.S.C. § 2255, federal prisoners may move to vacate, set aside, or correct their sentences. There are four grounds on which relief may be granted: (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," (3) "the sentence was in excess of the maximum authorized by law," and (4) the sentence is otherwise "subject to collateral attack." 28 U.S.C. § 2255(a).

In seeking to collaterally attack a conviction, the petitioner bears the burden of showing entitlement to relief, David v. United States, 134 F.3d 470, 474 (1st Cir. 1998), including any entitlement to an evidentiary hearing, Cody v. United States, 249 F.3d 47, 54 (1st Cir. 2001). See also Rules 4 & 8 of the Rules Governing Section 2255 Proceedings.

---

[1] The government states that the motion is timely because it was filed within one year of this court's judgment. Id. at 10 n.5. But Defendant's motion is actually premature where the First Circuit has not yet addressed his appeal. "[I]n the absence of extraordinary circumstances, the orderly administration of criminal justice precludes a district court from considering a § 2255 motion while review of the direct appeal is still pending." United States v. Weekes, 611 F.3d 68, 71 (1st Cir. 2010) (quotation omitted). Instead, a district court should ordinarily dismiss a premature petition without prejudice. Id. at 72. This rule is justified because "disposition of the appeal may render the [§ 2255 motion] unnecessary," Feldman v. Henman, 815 F.2d 1318, 1320 (9th Cir. 1987) (quotation omitted), and because it minimizes the risk of conflicting judicial determinations, United States v. Taylor, 648 F.2d 565, 572 (9th Cir. 1981). See also United States v. Gordon, 634 F.2d 638, 639 (1st Cir. 1980). The court finds extraordinary circumstances are present here where, although the appeal is still pending, no grounds for relief have been raised before the First Circuit, and the time for Defendant to file such a brief expired a year ago.

## III. Discussion

Defendant asserts four bases for entitlement to relief under 28 U.S.C. § 2255: (1) Defendant's conviction under 18 U.S.C. § 924(c)(1)(A)(i) (Count 8) "is unsupported by sufficient evidence and violates due process of law" where "[t]here is no evidence establishing actual or constructive possession [of a firearm], nor any evidence that firearm possession was reasonably foreseeable to [Defendant][,]" Mot. to Vacate ECF 2 [Doc. No. 974]; (2) Defendant's base offense level of 32 "was improper and unsupported[,]" as the "[fentanyl] quantity attributed to [Defendant] was based on speculation rather than facts," id.; (3) Defendant's sentence "was based on incorrect assumptions and legally insufficient findings," in violation of his right to due process under the Fifth Amendment to the United States Constitution, id.; and (4) Defendant's "[t]rial counsel provided constitutionally ineffective assistance . . . by failing to challenge the lack of evidence establishing [Defendant's] possession, control, or dominion over the firearm and narcotics[,]" id.

The government contends that Defendant cannot pursue his first, second, and third asserted grounds for relief because Defendant "waived the right to collaterally attack the sentence in a plea agreement." Opp'n 11 [Doc. No. 990]. As to Defendant's assertion of ineffective assistance of counsel, the government argues that Defendant has failed to make the requisite showing under Strickland v. Washington, 466 U.S. 668, 693 (1984). Id. at 17–21.

### A. *Defendant's First, Second, and Third Grounds for Relief*

Insofar as Defendant challenges his conviction under 18 U.S.C. § 924(c)(1)(A)(i) (Count 8), his base offense level, and whether his sentence comports with due process, see Mot. to Vacate ECF 2 [Doc. No. 974], Defendant's challenges are barred under the terms of his Plea Agreement [Doc. No. 688].

"A petitioner generally may not bring a § 2255 petition where he or she has waived the right to collaterally attack the sentence in a plea agreement." Kimmel v. United States, 761 F. Supp. 3d 345, 348 (D. Mass. 2024). If, however, the waiver "would result in a miscarriage of justice[,]" the waiver is "unenforceable." Hunter v. United States, 608 U.S. 713, 727 (2026). This is "a high bar[,]" as "the waiver may be set aside only if the sentence is marred by the kind of egregious error that would bring the judicial system into disrepute." Id. The error must be "obvious—not one a judge could reasonably make" and "of the type that would undermine public confidence in the judiciary." Id.

In the First Circuit, which has long-followed the "miscarriage of justice" view approved of by the Supreme Court in Hunter, waivers are "presumptively valid[,]" United States v. Teeter, 257 F.3d 14, 25 (1st Cir. 2001), when "(1) the plea agreement clearly outlined the waiver[;] (2) the Court inquired as to the defendant's understanding of the right(s) he or she was waiving[;] and (3) enforcement of the waiver would not constitute a miscarriage of justice[,]" United States v. DeFronzo, 281 F. Supp. 3d 243, 246 (D. Mass. 2017) (citing Teeter, 257 F.3d at 25–26); see United States v. Morillo, 910 F.3d 1, 2 (1st Cir. 2018); United States v. Miliano, 480 F.3d 605, 608 (1st Cir. 2007).

Here, Defendant's Plea Agreement [Doc. No. 688] set forth the waiver to which Defendant is now subject in the "Waiver of Appellate Rights and Challenges to Conviction or Sentence" section:

> Defendant agrees that:
>
> a) Defendant will not challenge Defendant's conviction on direct appeal or in any other proceeding, including in a separate civil lawsuit; and
>
> b) Defendant will not challenge Defendant's sentence . . . on direct appeal or in any other proceeding, including in a separate civil lawsuit.
>
> [. . . .]

> Defendant understands that, by agreeing to the above, Defendant is agreeing that Defendant's conviction and sentence will be final when the Court issues a written judgment after the sentencing hearing in this case. That is, after the Court issues a written judgment, Defendant will lose the right to appeal or otherwise challenge Defendant's conviction and sentence regardless of whether Defendant later changes Defendant's mind or finds new information that would have led Defendant not to agree to give up these rights in the first place.

Id. ¶ 6. On June 18, 2024, Defendant affirmed with his signature the accuracy of the agreement; his understanding of the crimes to which he was pleading, the possible penalties, and the applicable sentencing ranges; his satisfaction with his legal representation; and his entry into the agreement "freely and voluntarily . . . because I am in fact guilty of the offense(s) . . . [and] believe this [a]greement is in my best interest. Id. at 7. Accordingly, the Plea Agreement [Doc. No. 688] "clearly outlined the waiver" of Defendant's rights to challenge his sentence or conviction, with two limited exceptions described infra. DeFronzo, 281 F. Supp. 3d at 246 (citing Teeter, 257 F.3d at 25–26); see Morillo, 910 F.3d at 2 (requiring that a written waiver "comprise a clear statement describing the waiver and specifying its scope" (quotation omitted)).

As to the second criterion for a valid waiver, the court sufficiently "inquired as to the defendant's understanding of the right[s] he . . . was waiving[,]" DeFronzo, 281 F. Supp. 3d at 246 (citing Teeter, 257 F.3d at 25–26), through a colloquy with the Defendant at his change-of-plea hearing on June 18, 2024.[2]

At the hearing, Defendant answered in the affirmative when asked if he understood that "but for the terms set forth in the plea agreement that waives your right to appeal, you may have been able to argue in another proceeding, either a collateral proceeding or otherwise, that your

---

[2] A sworn Spanish interpreter translated for Defendant throughout the change-of-plea hearing. See June 18, 2024 Tr. 3:15–22 [Doc. No. 918]. Defendant does not contend that he was unable to understand the hearing proceedings.

conviction should be set aside or reduced"; and "but for the terms set forth in the plea agreement that waives your right to appeal your sentence or seek a reduced sentence, any sentence [the court] impose[s] could have been appealed by you on direct appeal or challenged in a future proceeding, collateral or otherwise[.]" June 18, 2024 Tr. 14:12–25 [Doc. No. 918]. Defendant also affirmed he understood "that [his] plea agreement has the following provisions in it":

> that you will not challenge your conviction on direct appeal or in any other proceeding, including a separate civil lawsuit and that you will not challenge your sentence, including any court orders related to forfeiture, restitution, fine, or supervised release, on direct appeal or in any other proceeding, including a separate civil lawsuit[.]

Id. at 15:1–10; see id. at 15:17–20 (Q: "But other than those two very narrow exceptions [of ineffective assistance of counsel or prosecutorial misconduct], you're giving up your right to appeal. Do you understand that?" | A: "Yes."). The court's questioning at the change-of-plea hearing was thus "specific enough to confirm [Defendant's] understanding of the waiver and [his] acquiescence in the relinquishment of rights. . . ." Teeter, 257 F.3d at 24 n.7.

Finally, enforcement of the waiver in Defendant's Plea Agreement [Doc. No. 688] does not "constitute a miscarriage of justice." DeFronzo, 281 F. Supp. 3d at 246 (citing Teeter, 257 F.3d at 25–26). The miscarriage of justice criterion in this context "requires a strong showing of innocence, unfairness, or the like[,]" United States v. Gil-Quezada, 445 F.3d 33, 37 (1st Cir. 2006), and "is to be applied sparingly and without undue generosity[,]" Miliano, 480 F.3d at 608 (quotation omitted); see Hunter, 608 U.S. at 727 ("[S]tandard-fare errors in misapplying sentencing law cannot cancel an appeal waiver."); Teeter, 257 F.3d at 26 (describing the miscarriage of justice requirement as "demanding enough to prevent defendants who have agreed to waive their right to appeal from successfully pursuing garden-variety claims of error"). The First Circuit instructs that, "[w]hen mulling whether a miscarriage of justice is in prospect[,]"

courts should "consider, among other things, the clarity of the alleged errors, its character and gravity, its impact on the defendant, any possible prejudice to the government, and the extent to which the defendant acquiesced in the result." Gil-Quezada, 445 F.3d at 37.

Defendant does not claim with the requisite specificity that enforcement of the plea agreement will result in a miscarriage of justice. See Mot. to Vacate ECF 1–3 [Doc. No. 974]; Def.'s Reply ECF 1–2 [Doc. No. 991] (focusing on Defendant's ineffective assistance of counsel claim, rather than the claims contemplated by the waiver in his agreement). The court "could[] therefore[] simply end [the] inquiry at this point." Gil-Quezada, 445 F.3d at 27 (citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)). Even if Defendant had offered argument on this point, however, the record does not support a finding of a miscarriage of justice.

Consistent with the binding terms of his Rule 11(c)(1)(C) Plea Agreement [Doc. No. 688], Defendant was sentenced to 180 months of imprisonment. Id. ¶ 5; Judgment 3 [Doc. No. 884]. Under the Sentencing Guidelines, however, Defendant faced a term of imprisonment between 270 months and 312 months. Feb. 4, 2025 Tr. 18:17–19:24 [Doc. No. 919]. Where the term of imprisonment imposed on Defendant was between 7.5 and 11 years below the Guidelines range and was no more than the minimum statutory mandatory sentence, "far from working a miscarriage of justice, [Defendant's] plea agreement conferred significant benefits on him." Sotirion v. United States, 617 F.3d 27, 38 (1st Cir. 2010). As described supra, Defendant was also fully apprised of the terms of the Plea Agreement [Doc. No. 688] both by the agreement's plain language and through the court's colloquy with the Defendant at his June 18, 2024 change-of-plea hearing. There is therefore no basis on which to conclude that enforcement of Defendant's Plea Agreement [Doc. No. 688] "constitute[s] a miscarriage of justice." DeFronzo, 281 F. Supp. 3d at 246 (citing Teeter, 257 F.3d at 25–26).

B. *Defendant's Fourth Ground for Relief (Ineffective Assistance of Counsel)*

1. Legal Standard

The Sixth Amendment to the United States Constitution protects the right of the accused in a criminal proceeding to representation by an attorney "who plays the role necessary to ensure that the trial is fair." Strickland, 466 U.S. at 685. To establish a claim of ineffective assistance of counsel, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

"The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." United States v. De La Cruz, 514 F.3d 121, 140 (1st Cir. 2008) (quotation omitted). The Constitution does not guarantee a defendant a perfect or successful defense. See Moreno-Espada v. United States, 666 F.3d 60, 65 (1st Cir. 2012). Rather, "the performance standard is that of reasonably effective assistance under the circumstances then obtaining." United States v. Natanel, 938 F.2d 302, 309–10 (1st Cir. 1991).

An ineffective assistance of counsel claim has two elements. First, the court determines whether counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 690. The court should be "highly deferential" in scrutinizing counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 689. Second, the court assesses whether counsel's challenged acts or omissions prejudiced the petitioner. Id. at 694. This requires the petitioner to demonstrate that "there is a reasonable probability" that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. The court need not address both elements if the petitioner makes an insufficient showing on one of them. Id. at 697.

"[W]hen, as in this case, a petition for federal habeas relief is presented to the judge who presided at the petitioner's [criminal proceedings], the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).

2. Analysis

**a. Defendant's Arguments**

In asserting his ineffective assistance of counsel claim, Defendant states that he "consistently questioned the firearm charge under 18 U.S.C. § 924(c)[,]" "repeatedly sought to challenge the § 924(c) charge[,]" and "delayed signing the plea agreement for several months because of that concern." Def.'s Reply ECF 1 [Doc. No. 991]. Defendant alleges that, despite his request "that counsel seek removal of the § 924(c) charge and preserve appellate rights[,]" his counsel "informed him that the Government would not agree to those requests and that there was nothing she could do regarding those issues." Id.

As to his decision to forgo trial, Defendant asserts he "came to believe that he had no realistic option other than accepting the plea agreement" because his counsel repeatedly advised that "she would not be able to continue representing" Defendant if he opted for trial, "the Court would not provide sufficient time for trial preparation[,]" and Defendant "faced the possibility of receiving a substantially longer sentence if he exercised his right to a trial." Id.

With respect to the amount of fentanyl factored into Defendant's base offense level for sentencing, Defendant states that he "repeatedly questioned the drug quantity attributed to him" where "the quantity ultimately attributed to [him] was increased . . . based in part upon narcotics recovered from a codefendant at a different location" and Defendant "was not present during that seizure and consistently disputed responsibility for those additional narcotics." Id. at ECF 2.

Defendant reports that, rather than engage in "greater investigation and legal analysis before . . . advis[ing] him to plead guilty[,]" his counsel advised that "quantities above the statutory threshold did not matter because the case already involved more than 400 grams" of fentanyl. Id.

**b. Objective Reasonableness of Counsel's Performance**

Insofar as Defendant asserts that counsel did not effectively challenge the alleged evidentiary connections between Defendant and the firearms, the location where the narcotics were found, or the amount of narcotics attributed to Defendant, the government's factual basis for the case against Defendant rendered any such challenge essentially futile. Based on, *inter alia*, intercepted communications, surveillance of the Defendant, a search of Defendant's residence, and a search of an apartment that was the locus of the narcotics activity (the "Soma apartment"), the government could readily tie Defendant to the weapon, the Soma apartment, and the narcotics attributed to him. See June 18, 2024 Tr. 24:10–26:16 [Doc. No. 918].

As to the Soma apartment, for example, investigators saw Defendant "on numerous occasions" "outside of the Soma apartment building at times when intercepted calls indicated" Defendant would be meeting with co-defendants to "mix, bag, or distribute drugs." Id. at 18:5–19. Although Defendant's "main drug courier" resided at the apartment, "[D]efendant had rented the apartment[,]" which was "used to package and distribute drugs." Id. at 17:25–18:4, 25:6–14. The amount of narcotics attributed to Defendant arose from the discovery of 654 grams of fentanyl found in the Soma apartment, see id. at 23:25–24:7, and 80 grams of fentanyl found in Defendant's residence, see id. at 23:16–20.

As to the 18 U.S.C. § 924(c) charge brought against Defendant, investigators intercepted communications between Defendant and his "main drug courier[,]" in which Defendant "direct[ed] [the courier] to pick up a handgun[.]" Id. at 18:23–25. Intercepted calls "corroborated

that [the courier] . . . picked [the gun] up and brought it to the Soma apartment." Id. at 19:1–2. In subsequent communications, Defendant instructed the "courier" that "a customer would be giving [the courier] a gun as a payment for a drug debt." Id. at 23:11–14. Other communications, alongside surveillance of the Soma apartment, "indicated that [the courier] brought the gun to the Soma apartment." Id. at 23:14–15. When the Soma apartment was searched, investigators discovered three firearms, a "loaded magazine," and "a plastic bag containing three rounds of assorted 9-millimeter ammunition." Id. at 24:4–6.

At the change-of-plea hearing, Defendant also confirmed his understanding of the government's recited facts, agreed with that recitation without correction or objection, and affirmed that he was, in fact, guilty of the conduct set forth in the recitation. See id. at 24:11–26:16. Considering the facts offered by the government and Defendant's affirmation of those facts, Defendant's counsel was not required to make arguments or raise objections lacking a cogent basis in fact. See Isabel v. United States, 980 F.2d 60, 65 (1st Cir. 1992) (counsel could not reasonably have argued against a sentencing enhancement that applies when "the defendant knows . . . laundered funds were the proceeds of narcotics trafficking" where "[t]he evidence submitted at trial showed that [the defendant] knew that the funds he laundered came from unlawful dealing in narcotics"); id. ("[I]t would have made no sense for counsel to argue that [defendant] was a minor or minimal participant. . . . [The defendant] was a direct and essential party to [the conspiracy]. The recitation of evidence . . . amply bears out that point.").

Defendant's assertion that he believed "he had no realistic option other than accepting the plea agreement" is likewise insufficient to demonstrate that his counsel's performance was not objectively reasonable. See Def.'s Reply ECF 1 [Doc. No. 991]. Far from being unreasonable, for example, counsel's warnings that Defendant could face a substantially longer sentence if

convicted at trial represented a realistic assessment of the evidence against him, as described supra, and the relevant statutory penalties. See 21 U.S.C. § 846 (mandatory ten-year term of imprisonment and maximum term of life imprisonment); 21 U.S.C. § 841(a)(1), (b)(1)(A)(vi) (same); 18 U.S.C. § 924(c) (mandatory five-year term of imprisonment, running consecutively to term of imprisonment imposed for underlying crime).

Similarly, that counsel herself may have been unable to proceed to trial or opined that there was insufficient time for trial preparation, see Def.'s Reply ECF 1 [Doc. No. 991], does not amount to objectively unreasonable conduct, particularly where the docket reflects no efforts by Defendant to bring his purported concerns to the court's attention or to seek new appointed counsel at any point in the case. Defendant's statements at his change-of-plea hearing and at sentencing, in which he affirmed his satisfaction with his counsel and expressed his gratitude for her assistance, likewise run contrary to his present position. Blackledge v. Allison, 431 U.S. 63, 73–74 (1974) ("For the representations of the defendant . . . at [a plea] hearing . . . constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."); see June 18, 2024 Tr. 6:12–15 [Doc. No. 918] (Q: "And are you fully satisfied with the counsel, representation, and advice given to you in this case by your attorney?" | A: "Yes."); Feb. 4, 2025 Tr. 23:20–22 [Doc. No. 919] ("And I want to thank my attorney. She's helped me a lot.").

The disposition of Defendant's case also underscores his counsel's objectively reasonable representation. For example, as indicated supra, counsel's representation of Defendant and negotiation of a plea agreement facilitated the imposition of a carceral sentence between 7.5 and 11 years below the range indicated by the Sentencing Guidelines. See Feb. 4, 2025 Tr. 18:17–19:24 [Doc. No. 919] (calculating Defendant's carceral sentence under the Guidelines at 270 to

312 months of imprisonment). At sentencing, Defendant's counsel also raised several objections to Defendant's presentence investigation report and successfully argued that Defendant had a criminal history score of one and a criminal history category of I, rather than a criminal history score of two and a criminal history category of II as calculated by Probation. Id. at 11:9–18:23.

In sum, whether in reference to his counsel's advice, avoidance of futile arguments, strategic decisions, or general advocacy, Defendant has failed to show that his counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 690. "Failing to establish cause, there is no need to address the prejudice prong" under Strickland. Stevenson v. Dickhaut, No. 13-cv-11337-IT, 2015 WL 2129717, at *10 (D. Mass. May 6, 2015) (citing Magee v. Harshbarger, 16 F.3d 469, 472 (1st Cir. 1994)).

## IV. Conclusion

For the foregoing reasons, Defendant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [Doc. No. 974] is DENIED.

IT IS SO ORDERED.

October 19, 2026

/s/ Indira Talwani
United States District Judge